**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**ASSUNTA, INC.,** doing business as **BOGIES,**

                Plaintiff,        1:09-cv-350 (GLS/RFT)

        v.

**PENN-AMERICA INSURANCE COMPANY,**[1]

                Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lynch, Farrell Law Firm<br>111 State Street<br>Albany, NY 12207 | PETER A. LYNCH, ESQ. |
| **FOR THE DEFENDANT:** | |
| Miranda, Sokoloff Law Firm<br>240 Mineola Boulevard<br>Mineola, NY 11501 | MICHAEL A. MIRANDA, ESQ. |

**Gary L. Sharpe
District Court Judge**

## MEMORANDUM-DECISION AND ORDER

---

[1] Although sued as "Penn-American Insurance Company," the court will refer to defendant by its actual name, "Penn-America Insurance Company." (*See* Notice of Removal, Dkt. No. 1.)

## I. Introduction

Plaintiff Assunta brought this action against defendant Penn-America, alleging that Penn-America is obligated to defend and indemnify Assunta in an underlying personal injury action brought by third-party Robert Gloria. (*See generally* Dkt. No. 1:2.) Pending are Assunta's motion for summary judgment, (Dkt. No. 5), and Penn-America's cross-motion for summary judgment, (Dkt. No. 12). Both parties seek a declaratory judgment under F̲ED̲. R. C̲IV̲. P. 57 regarding Penn-America's obligations to Assunta. For the reasons that follow, Assunta's motion is denied and Penn-America's cross-motion is granted.

## II. Background

Assunta, Inc. is a domestic corporation organized and existing under New York State law with its principal place of business in New York. (*See* Pl. Compl. ¶ 1, Dkt. No. 1:2.) Assunta owns and operates Bogies, a tavern located in Albany, New York. (*See* Pl. SMF ¶ 1, Dkt. No. 9.) Penn-America Insurance Company is organized and domiciled in the State of Pennsylvania. (*See* Notice of Removal ¶ 6, Dkt. No. 1.) Penn-America issued a commercial general liability insurance policy to Assunta, the

2

named insured, covering Bogies' premises for the period of August 27, 2005, to August 27, 2006.  (*See id.* at ¶ 2.)

Under the insurance policy, coverage is excluded for damages that arise from an "assault," "battery," or "physical altercation" occurring on Bogies' premises.[2]  (McWilliams Aff., Ex. A at 81, Dkt. No. 18:2.)  The policy defines "physical altercation" as "a dispute between individuals in which one or more persons sustain bodily injury arising out of the dispute." (*Id.*)  The policy also provides a liquor liability exclusion, according to which Assunta is not entitled to coverage for:

> "Bodily injury" or "property damage" for which [Assunta] may be held liable by reason of (1) [c]ausing or contributing to the intoxication of any person; (2) [t]he furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) [a]ny statute, ordinance or

---

[2]The provision's specific language is:
"[T]his insurance does not apply to liability for damages because of 'bodily injury', 'property damage' ... medical expenses arising out of an 'assault', 'battery' or 'physical altercation' that occurs in, on, near or away from an insured's premises:
1. Whether or not caused by, at the instigation of or with the direct or indirect involvement of the insured, an insured's employees, patrons or other persons ... or
2. Whether or not caused by or arising out of insured's failure to properly supervise or keep the insured's premises in a safe condition, or
3. Whether or not caused by or arising out of any insured's act or omission in connection with the prevention, suppression, failure to warn of the 'assault', 'battery' or 'physical altercation', including but not limited to, negligent hiring, training and/or supervision.
4. Whether or not caused by or arising out of negligent, reckless or wanton conduct by the insured, an insured's employees, patrons or other persons.
(McWilliams Aff., Ex. A at 81, Dkt. No. 18:2.)

3

> regulation relating to the sale, gift, distribution or use of alcoholic beverages.

(McWilliams Aff., Ex. A at 82, Dkt. No. 18:2.)

The policy requires Assunta to notify Penn-America about any "'occurrence' or an offense which may result in a claim ... as soon a[s] practicable ...." (McWilliams Aff., Ex. A at 16, Dkt. No. 18:2.)  Moreover, whenever "a claim is made or 'suit' is brought against [the] insured," Assunta is required to notify Penn-America "as soon as practicable." (*Id.* at 16.)  And upon receiving "any demands, notices, summonses or legal papers received in connection with the claim or 'suit,'" Assunta must "[i]mmediately send ... copies" to Penn-America. (*Id.*)

On June 2, 2006, third-party Robert Gloria brought an action in New York State Supreme Court, Suffolk County, for injuries allegedly sustained as a result of Assunta's negligence. (*See* Gloria Compl., Dkt. No. 1:2.) Gloria alleged that he was injured in an altercation while a patron of Assunta's club on December 9, 2005.  In his first cause of action, Gloria claimed that Assunta breached its duty owed to Gloria by causing and creating a dangerous condition in the club.[3]  (*See id.* at ¶¶ 40-57.)  In his

---

[3] Specifically, Gloria alleges that Assunta (1) failed to provide adequate and proper security or crowd control, (2) failed to adequately light the club, (3) allowed underage persons into the club, and (4) failed to avoid the altercation. (*See* Gloria Compl. ¶¶ 40-57, Dkt. No.

second cause of action, Gloria alleged that Assunta violated N.Y. GEN. OBLIG. LAW §§ 11-101 and 11-103 by failing to adequately monitor its patrons and by serving alcoholic beverages to already intoxicated patrons. (*See id.* at ¶ 60-61.) Third, Gloria claimed that Assunta had a "conscious objective" to engage in the actions and conduct alleged, which thereby caused severe emotional distress. (*See id.* at ¶ 65.)

According to Assunta, it first became aware of the Gloria incident after March 6, 2006, when it received a letter from Gloria's counsel. (*See* Pl. SMF ¶ 6, Dkt. No. 9 (citing Pl. Ex. 4, Dkt. No. 6:2).) Assunta responded to Gloria's counsel on March 10, 2006. (*See* Pl. Ex. 5, Dkt. No. 6:2.) Assunta notified Penn-America of the incident on April 18, 2006.[4] (*See* Def. Mem. of Law at 13, Dkt. No. 19; *see also* Pl. SMF ¶ 7, Dkt. No. 9.) Penn-America issued a disclaimer to Assunta on April 25, 2006, disclaiming coverage with regards to the Gloria dispute. (*See* Pl. Resp. SMF ¶ 7, Dkt. No. 20; *see also* Def. SMF ¶ 27, Dkt. No. 15.)

On March 9, 2009, Assunta filed suit against Penn-America in New

---

1:2.)

[4] The notification included a letter sent by Gloria's counsel to Assunta's counsel, in which Gloria's counsel mentioned that Gloria was "severly injured" due to the "negligence on the part of [Assunta] in the ownership, operation, management and security" of the club. (*See* McWilliams Aff., Ex. B, Dkt. No. 18:3.)

5

York State Supreme Court, Albany County, seeking a declaratory judgment under N.Y. C.P.L.R. § 3001 that Penn-America was obligated to defend and indemnify Assunta in the Gloria action. (*See* Assunta Compl. ¶¶ 5, 12, Dkt. No. 1:2.) Assunta first notified Penn-America of Gloria's underlying suit when it served Penn-America with the summons and complaint for the coverage action on March 17, 2009. (*See* Def. SMF ¶ 28, Dkt. No. 15; *see also* Pl. Resp. SMF ¶ 7, Dkt. No. 20.) On March 19, 2009, Penn-America sought removal of this action to the United States District Court for the Northern District of New York based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (*See* Dkt. No. 1.) The present action was removed to this court on March 26, 2009.[5]

### III. Standards of Review

### A. Summary Judgment

The standard for the grant of summary judgment is well established, and will not be repeated here. For a full discussion of the standard, the

---

[5] Neither party disputes that New York law controls here since (1) the policy issued to Assunta is a New York policy, (2) Assunta is identified on the policy as a New York company, and (3) the alleged underlying incident occurred in New York. (*See* Def. Mem. of Law at 19 n.2, Dkt. No. 19.) Accordingly, the court will apply New York State substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *see also Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

6

court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp.2d 192, 194-95 (N.D.N.Y. 2007).

## B.     Indemnity and Coverage Actions

In New York, "[a]n insurer's obligation to furnish its insured with a defense is heavy indeed, and, of course, broader than its duty to pay." *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 326 (N.Y. 1974).  Where the pleadings allege a covered occurrence, the insurer has a duty to defend "even though the facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Fitzpatrick v. Am. Honda*, 78 N.Y.2d 61, 63 (N.Y. 1991) (citation omitted).  In other words, "the complaint controls the determination of [the insurer's] duty to defend," even if discovery reveals evidence showing that the underlying incident resulted from actions not covered under the policy. *Bovis Lend Lease LMB, Inc. v. Cont'l Cas. Ins. Co.*, No. 02 Civ. 7674, 2004 WL 691395, at *4 (S.D.N.Y. March 31, 2004) (citing *Showler v. Am. Mfrs. Mut. Ins. Co.*, 261 A.D.2d 896, 898 (4th Dep't 1999)).  Ultimately, "[t]he merits of the complaint are irrelevant and, an insured's right to be accorded legal representation is a contractual right ... and this right exists even if debatable theories are alleged in the pleading against the insured." *Town of Massena v.*

7

*Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (N.Y. 2002) (internal quotation marks and citation omitted). Moreover, it is not "material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusionary provisions." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (N.Y. 1984). "Rather, the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." *Id.* (citation omitted); *see also Specialty Nat'l Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp.2d 466, 470-71 (S.D.N.Y. 2009). Accordingly, the burden is on the insurer to prove that the incident and underlying claim fit completely within the policy's exclusions. *See Int'l Paper Co.*, 35 N.Y.2d at 326; *see also City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir. 1989). The duty to defend exists as long as "the allegations of the complaint are even potentially within the language of the insurance policy." *Town of Massena*, 98 N.Y.2d at 459 (citations omitted).

"On summary judgment, a declaration of no duty to defend can only be made if [the insurer] demonstrates that 'it could be concluded as a matter of law that there is no possible factual or legal basis on which the

8

insurer might eventually be held to be obligated to indemnify.'" *Agway, Inc. v. Travelers Indem. Co.*, No. 93-CV-557, 1993 WL 771008, at *2 (N.D.N.Y. Dec. 6, 1993) (quoting *Spoor-Lasher Co., Inc. v. Aetna Cas. & Sur. Co.*, 39 N.Y.2d 875, 876 (N.Y. 1976)). But "if there is a doubt as to whether the claim comes within the insurer's duty to indemnify, the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability." *Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995) (citing *Seaboard Sur. Co.*, 64 N.Y.2d at 304).

## IV.  Discussion

### A.  Notice Requirements

As a threshold matter, Penn-America argues that Assunta failed to give timely notice of both the Gloria incident and the subsequent suit, and therefore did not meet a condition precedent to coverage under the insurance contract. (*See* Def. Mem. of Law at 1, 10-15, Dkt. No. 19.) While the dates on which Penn-America received notice are undisputed, Assunta contends that (1) its delay in notifying Penn-America of the Gloria incident was reasonable, and (2) it was not required to provide Penn-America with any additional notice of the Gloria suit because Penn-America

9

disclaimed coverage and thereby waived the policy's notice requirements regarding the Gloria dispute.  (*See* Pl. Resp. SMF ¶¶ 6-7, Dkt. No. 20; Pl. Mem. of Law at 4, Dkt. No. 6:3.)

In general, compliance with notice requirements in an insurance policy is "a condition to the insurer's liability."[6]  *Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (N.Y. 1972) (citing *Rushing v. Commercial Cas. Ins. Co.*, 251 N.Y. 302, 304 (N.Y. 1929)).  Accordingly, a failure to satisfy a policy's notice requirements with timely written notice "vitiates the contract" regarding both the insured and the third party seeking to recover a judgment against the insured.  *Deso v. London & Lancashire Indem. Co.*, 3 N.Y.2d 127, 129 (N.Y. 1957) (citations omitted).  Therefore, "the term 'as soon as practicable' ... requires that written notice be given within a reasonable time under all the circumstances."  *Id.*  (citation omitted).

Where notice is delayed, the burden is on the insured to "explain or excuse delay in giving notice and show it to be reasonable."  *Sec. Mut. Ins. Co. of N.Y.*, 31 N.Y.2d at 441 (citation omitted).  Valid excuses include lack

---

[6]As the Second Circuit recognizes, "[p]rompt notice permits the insurer to investigate the facts on which the claim is predicated and to adjust its books in order to maintain a proper reserve fund in light of the insured's claim."  *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2d Cir. 1984).

10

of knowledge that an accident has occurred, a good-faith belief in non-liability, or absence from the state. *See id.* The reasonableness of an excuse "is usually for the jury." *Deso*, 3 N.Y.2d at 129 (citation omitted). However, "absent an excuse or mitigating circumstances, courts have assumed the function of determining fulfillment of the condition." *Id.* at 130. Therefore, where an insured has delayed notice and has failed to offer an explanation, the court must determine as a matter of law whether the delay was reasonable. *Id.*

Under New York Law, "there is no inflexible test of reasonableness," particularly where the reasonableness inquiry is "heavily dependent" on the factual context. *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 20 (N.Y. 1979). Nonetheless, absent mitigating circumstances, "delays for one or two months are routinely held 'unreasonable.'" *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 440 (2d Cir. 1995) (citations omitted). Where a policy requires notice "as soon as practicable," New York courts have held as a matter of law that relatively short periods of unexcused delay are unreasonable. *See, e.g.*, *Deso*, 3 N.Y.2d at 131 (51 days); *Chicago Ins. Co. v. Halcond*, 49 F. Supp.2d 312, 320 (S.D.N.Y. 1999) (38 days); *Pandora Indus., Inc. v. St. Paul Surplus Lines Ins. Co.*, 188 A.D.2d

11

277, 277 (1st Dep't 1992) (31 days); *Republic N.Y. Corp. v. Am. Home Assurance Co.*, 125 A.D.2d 247, 248 (1st Dep't 1986) (45 days); *Power Auth. of the State of N.Y. v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 343 (1st Dep't 1986) (53 days); *see also Chicago Ins. Co. v. Borsody*, 165 F. Supp.2d 592, 599 (S.D.N.Y. 2001) (noting that 40-day delay is unreasonable regardless of whether policy requires "immediate" notice or notice "as soon as practicable"); *Safer v. Gov't Employees Ins. Co.*, 254 A.D.2d 344, 345 (2d Dep't 1998) (finding delay exceeding one month unreasonable as a matter of law where the insurance policy required notification of the accident "as soon as is practical").  Notably, where similar language governs an insurer's obligation to provide timely notice of a disclaimer to the insured, *see Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028 (N.Y. 1979), New York courts have found comparable time periods unreasonable.  *See, e.g.*, *Squires v. Robert Marini Builders*, 293 A.D.2d 808, 810 (3d Dep't 2002) (42 days); *W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.*, 290 A.D.2d 278, 279 (1st Dep't 2002) (30 days); *Colonial Penn Ins. Co. v. Pevzner*, 266 A.D.2d 391, 391 (2d Dep't 1999) (41 days); *Nationwide Mut. Ins. Co. v. Steiner*, 199 A.D.2d 507, 507 (2d Dep't 1993) (41 days).  In addition, where a policy requires "immediate"

12

notice, New York courts have found even shorter periods of time to be unreasonable. *See, e.g.*, *Rushing*, 251 N.Y. at 304 (22 days); *Haas Tobacco Co. v. Am. Fid. Co.*, 226 N.Y. 343, 344 (N.Y. 1919) (10 days); *Reina v. U.S. Cas. Co.*, 228 A.D. 108, 111 (1st Dep't 1930) (26 days).

Here, Assunta was required under the policy to notify Penn-America about an "'occurrence' or an offense which may result in a claim ... as soon a[s] practicable ...." (McWilliams Aff., Ex. A at 16, Dkt. No. 18:2.) Assunta was additionally required to notify Penn-America of any claim or suit brought against it "as soon as practicable." (*Id.*) According to Penn-America, Assunta became vicariously aware of the incident on the date it occurred, December 9, 2005, because one Assunta employee witnessed the incident and another spoke with Gloria immediately after the incident. (*See* Def. Mem. of Law at 12, Dkt. No. 19 (citing Miranda Decl., Def. Ex. A, Gloria Dep. at 58, 62-64, 66, Dkt. No. 17:2).) However, Assunta contends that it first received notice of Gloria's claim in a letter sent by Gloria's counsel on March 6, 2006, which Assunta responded to on March 10, 2006. (*See* Pl. SMF ¶ 6, Dkt. No. 9 (citing Pl. Ex. 4, Dkt. No. 6:2); *see also* Pl. Ex. 5, Dkt. No. 6:2.) Neither party disputes that Assunta failed to notify Penn-America of the incident until April 18, 2006. (*See* Def. Mem. of Law

13

at 13, Dkt. No. 19; *see also* Pl. SMF ¶ 7, Dkt. No. 9; Pl. Resp. SMF ¶ 6, Dkt. No. 20.)  But, Assunta claims that the delay between learning of the incident and notifying Penn-America was reasonable.  (*See* Pl. Resp. SMF ¶ 6, Dkt. No. 20.)

For present purposes, the court will assume that Assunta did not become aware of the Gloria incident until after receiving Gloria's March 6, 2006 letter.[7]  In that letter, Gloria's counsel expressly stated (1) that Gloria sustained injuries during an accident that occurred on Assunta's premises on December 9, 2005; (2) that Gloria was considering and willing to prosecute claims based on those injuries; (3) that Gloria received medical treatment for those injuries; and (4) that Assunta's insurance carrier should be involved in resolving the matter.  (*See* Pl. Ex. 4, Dkt. No. 6:2.)  Therefore, even if Assunta received Gloria's letter on March 10—the date Assunta issued a response letter—an undisputed thirty-nine days passed between becoming aware of the incident and notifying Penn-America of the potential claim.

Assunta offers no explanation or excuse for its delay in notifying

---

[7]While Assunta may have been aware or vicariously aware of the Gloria incident before receiving the March 6 letter from Gloria's counsel, the court here construes all reasonable inferences in favor of Assunta as the non-moving party.  *See Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).

14

Penn-America of the Gloria incident, but rather states in a conclusory manner that it gave prompt and reasonable notice. (*See, e.g.*, Simeone Aff. ¶¶ 7-8, Dkt. No. 6:2; Pl. Mem. of Law at 4, Dkt. No. 6:3; Lynch Aff ¶ 19, Dkt. No. 7:2; Pl. Resp. SMF ¶ 6, Dkt. No. 20.) Consequently, the court must determine as a matter of law whether that delay was reasonable. Acknowledging that New York law does not provide a bright-line test but rather requires analysis of reasonableness under all the circumstances, *see Mighty Midgets, Inc.*, 47 N.Y.2d at 20, the court finds that Assunta's delay here of at least thirty-nine days was unreasonable as a matter of law. *See Fairchild Indus., Inc.*, 56 F.3d at 440. First, Assunta has provided no explanation, excuse, or mitigating factors to justify its delay. Second, it is clear that both Assunta and its attorneys were aware of the Gloria incident and the potentiality for a claim by March 10, and possibly earlier. Third, Assunta has not made any showing that "a reasonable business person would have made the same decisions under the same circumstances." *Mount Vernon Fire Ins. Co. v. DLRH Assocs.*, 967 F. Supp. 105, 110 (S.D.N.Y. 1997). And fourth, where a policy requires notice "as soon as practicable," as it does here, New York courts have found equal, and lesser, periods of unexcused delay unreasonable. *See, e.g.*, *Borsody*, 165

15

F. Supp.2d at 599; *Halcond*, 49 F. Supp.2d at 320; *Safer*, 254 A.D.2d at 345; *Pandora Indus., Inc.*, 188 A.D.2d at 277; *Republic N.Y. Corp.*, 125 A.D.2d at 248.

Therefore, since its failure to comply with the policy's notice requirements was unexcused and unreasonable, Assunta has not met the condition precedent to Penn-America's liability. *Sec. Mut. Ins. Co. of N.Y.*, 31 N.Y.2d at 440. The record demonstrates that no genuine issue of material fact exists as to Assunta's failure to meet the policy's notice provisions. Accordingly, Penn-America is entitled to judgment as a matter of law and is not required to defend or indemnify Assunta in the underlying Gloria suit. *See Deso*, 3 N.Y.2d at 129.

Having found Assunta's delayed notice of the Gloria incident unreasonable, the court need not determine whether Assunta was required to notify Penn-America of Gloria's suit or whether Penn-America waived and thereby relinquished its further rights to notice after disclaiming coverage on April 25, 2006.

**B.** **"Assault or Battery" and "Liquor Liability" Exclusions**

Penn-America also argues that under its insurance contract with Assunta, it is not obligated to indemnify or defend Assunta in the underlying

16

Gloria action because of the "Assault or Battery Exclusion" and the "Liquor Liability Exclusion."  (*See* Def. Mem. of Law at 1, 16-17, Dkt. No. 19 (citing McWilliams Aff., Ex. A at 81-82, Dkt. No. 18:2).)  However, as the court has already determined that Penn-America is not required to defend or indemnify in the Gloria action due to Assunta's failure to give reasonable notice, it is unnecessary to determine the merit of these additional arguments.

## IV.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Assunta's motion for summary judgment (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED** that Penn-America's cross-motion for summary judgment (Dkt. No. 12) is **GRANTED** and Penn-America is not obligated to defend or indemnify Assunta in the underlying action involving Robert Gloria; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 7, 2010
Albany, New York

_____
United States District Court Judge